IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NUTRITIONAL PRODUCTS
INTERNATIONAL, INC., a Florida
Corporation,

   Plaintiff,
v.               Case No.:

TRULIFE DISTRBUTION, INC., a
Florida corporation, and BRIAN GOULD,   JURY TRIAL DEMANDED
an individual,

   Defendants.
_____/

Plaintiff, NUTRITIONAL PRODUCTS INTERNATIONAL, INC. (hereinafter referred to as "NPI" and/or "Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendants, TRULIFE DISTRIBUTION INC. (hereinafter referred to as "TRULIFE"), and BRIAN GOULD, individually, (hereinafter "GOULD")(collectively, GOULD and TRULIFE are referred to as the "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. BRIAN GOULD is the son of Mitch Gould who is the Founder of a highly successful international product distribution company, NPI. BRIAN GOULD stole his father's business while he was working for his father and enjoying extraordinary benefits as a result.

2. Multiple lawsuits ensued and eventually the disputes were resolved. However, since that time, the son has used the assets, good will, and tradenames established by his father's business and career achievements for the purpose of enriching himself and damaging his father.

1

3. The son's conduct constitutes unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §501.01, et seq., and violation of the common laws of unfair competition and trademark infringement, all arising from false and/or misleading material statements of fact made by the son's company, TRULIFE in commercial advertisement and promotion, with the intention to deceive NPI's current and prospective clients, and enrich the son and his business at the expense of his father and NPI.

4. Defendants made these statements in interstate commerce and have caused or are likely to cause competitive or commercial injury to the Plaintiff NPI. The Plaintiff seeks monetary and injunctive relief.

## JURISDICTION

5. This court has jurisdiction over this action pursuant to 15 U.S.C. §1121, 28 U.S.C. §§1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

6. Venue is proper in this district under 28 U.S.C § 1391(b)(1), in that Defendant GOULD resides in, and directs, manages and controls Defendant TRULIFE which also does business in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. All conditions precedent to filing this action have occurred or been waived. The acts and omissions which give rise to the claims for relief herein all occurred after July 9, 2021.

**PARTIES**

8. Plaintiff, NUTRITIONAL PRODUCTS INTERNATIONAL INC., ("NPI"), is a Florida corporation with its principal business in Boca Raton, Florida. NPI is a world-renowned distribution platform for nutritional products. NPI serves as the U.S. headquarters for foreign brands, utilizing a proprietary methodology it terms "Evolution of Distribution." NPI has provided a turnkey, one- stop solution for foreign nutritional products and their brands seeking U.S distribution since 2008. In addition, NPI also helps contemporary nutritional products in the United States expand their branding and distribution.

9. Defendant GOULD is the son of the founder and CEO of NPI, and a former employee of NPI. GOULD created Defendant TRULIFE and engaged the company to compete with NPI when GOULD was still employed with NPI. Defendant GOULD resides in Parkland, Broward County, Florida.

10. Defendant, TRULIFE DISTRIBUTION INC., ("TRULIFE") is a Florida Corporation with its principal place of business in 401 E. Las Olas Blvd Suite 1400, Fort Lauderdale, Florida. TRULIFE was created in May 2019, and claims to have the same infrastructure and knowledge as NPI and competes with NPI.

**GENERAL ALLEGATIONS**

11. As a former executive of NPI, GOULD had access to and utilized various NPI "case studies" compiled by and related to the Plaintiff's business. In addition to case studies, Defendant GOULD had access to and utilized NPI's full information database, containing over 1 million customer and potential customer leads, business contacts, and all proprietary information and data from the inception of NPI, including client testimonies, client success stories, and various PDF versions and publications of NPI's success in the marketplace.

12. The NPI "case studies" are client success stories that were achieved by NPI and its founder Mitch Gould (hereinafter referred to as "MR. GOULD"), who is Defendant GOULD's father. MR. GOULD is well known throughout the nutrition industry on a global level, and NPI's case studies have been published on the company's website since 2008.

13. While employed with and receiving compensation from NPI, Defendant GOULD cloned the NPI operation for his own benefit, including appropriating the terms and conditions of its agreements, proposals, methodologies and tradenames ("Evolution of Distribution"), success stories, case studies, and testimonies.

14. In March 2019, and while still employed with Plaintiff, "Nutritional Products International, Inc.", Defendant GOULD created an entity called "Nutra Sales International Inc". ("Nutra Sales"), and convinced an individual to act as the sole officer of record for Nutra Sales to avoid disclosing GOULD's involvement and control of the company. GOULD utilized NPI credit cards and MR. GOULD's personal credit cards to launch Nutra Sales' lead campaign while working in NPI's office.

15. GOULD's use of the tradename "Nutra Sales International, Inc." is confusingly similar to Nutritional Products, International, and was intended, and was likely to create confusion among consumers who are seeking to do business with NPI and/or MR. GOULD.

16. While still employed with NPI, Defendant GOULD also solicited a prospective client of NPI and delivered to that prospect case studies, testimonies, contracts, and proposals on behalf of Nutra Sales.

17. GOULD also misappropriated NPIs customer list that was compiled over 11 years through great effort, time, and expense. NPI's methodology for creating its customer list included newsletter blasts with organic content and testimonial videos, participation at

trade shows, online ads including Facebook, LinkedIn, Google and industry publications, print ads, call teams, and webinars.

18.  Any party that responded favorably was given to an outsourced team that qualified the lead and identified the product type, location, and services that the prospective customer needed. Follow-up calls are made and if any interest was shown, one of NPI's customer service representatives would initiate a direct communication and evaluate and educate the client about NPI's services. Through these efforts, the customer list is the distillation of people with the need for NPI's specific services and not people who are available on any type of public platform.

19.  NPI discovered the disloyalty and engaged legal counsel to retrieve its proprietary information from GOULD, including its laptop computer, ECRM sales reports, and the "Evolution of Distribution" methodology created by NPI. Nutra Sales' "officer" of record then terminated his relationship with Nutra Sales in April 2019.

20.  That individual has stated that GOULD intended to continue to work with NPI until his own company, Nutra Sales was big enough that he could depart. GOULD then replaced Nutra Sales with Defendant TRULIFE which was incorporated in May 2019.

21.  NPI has also caught Defendant Gould hacking into its network database after GOULD left NPI's employ. Substantial litigation ensued between the parties which was resolved on or about July 9, 2021. None of the acts or omissions upon which any of the causes of action herein are based, predate July 9, 2021.

22.  Defendants GOULD and TRULIFE continue to use NPI's customer list.  During his employ with NPI, GOULD also learned, utilized and then misappropriated the Company's "Evolution of Distribution" tradename and methodology

5

23. The "Evolution of Distribution" is the name of a proprietary management process developed by NPI in 2009 which gives NPI's potential customers a one-stop shop for selling foreign customer's products within the United States that includes methods and procedures for shipping, customs clearance, ensuring FDA regulatory compliance, and warehousing, and retail and wholesale in-store and online sales.

24. From NPI's development through the time that GOULD left NPI's employ, NPI's Evolution of Distribution system was unique and a distinguishing characteristic of NPI's business, used by NPI internationally to create substantial financial benefit and value for the Company.

25. Defendant GOULD wrongfully appropriated NPI's Evolution of Distribution proprietary customer service management system, when he left NPI's employment and has cloned the same on the TRULIFE website calling it "Evolve Your Distribution." Defendant GOULD currently authorizes and oversees TRULIFE's use of NPI's Evolution of Distribution system as "Evolve Your Distribution".

26. TRULIFE's international sales and marketing proposal used to solicit international customers claims that it is an "innovative approach to mass distribution and marketing across the United States." To this day, TRULIFE delivers the proposal to prospective customers outside of the U.S. In fact, TRULIFE's proposal is not innovative at all, and is essentially a copy of NPI's pre-existing "International Marketing and Sales Proposal" which emphasizes the Evolution of Distribution system created and first used by NPI.

27. Defendant GOULD, through TRULIFE, also falsely advertises NPI's customer satisfaction case examples, i.e., "case studies" as if they were real-life examples of customers doing business with TRULIFE, which they are not.

28. In February 2025, TRULIFE also solicited a potential customer, and well known nutrition company, with a marketing brochure that represents that the following entities were TRULIFE "success stories": Native Remedies, Flora Health, SciTech Nutrition, and Click Protein.

29. On many occasions, entities have instructed TRULIFE to stop using their images and purported cases studies for TRULIFE 's benefit because the customers' actual experience was with Plaintiff NPI, and GOULD has refused. Notably, SciTech Nutrition told TRULIFE to cease using its name for any purpose as it does not do business with TRULIFE. The entities which are NPI's customers include SciTech, Native Remedies, Flora Health, and Click Protein. To this date, TRULIFE continues to solicit customers with marketing materials which falsely depict the above entities as customers of TRULIFE who are falsely considered "success stories" of TRULIFE.

30. On or about February 14, 2022, NPI was copied on an email that was addressed to "briang@nutricompany.com." which was not created by NPI and it is believed that the email was fraudulently created by or on behalf of Defendants GOULD and TRULIFE, to sabotage and convert NPI business to TRULIFE.

31. In February 2022, a potential client of NPI called upon TRULIFE for help with distribution of a product. After communications with the TRULIFE team, the potential client sent product samples to TRULIFE for review.

32. TRULIFE then sent an email to the prospect with various cases studies and testimonies that purported to be examples of satisfactory experiences with TRULIFE. The case studies however were examples of satisfactory experiences had by NPI's customers

7

with NPI, and the case studies were previously produced by and used in the marketplace by NPI.

33. On or about October 29, 2024, NPI's Director of Operations in Europe had an introductory meeting with a prospective customer. A follow up meeting was scheduled with NPI for November 4, 2024. During that meeting, the prospect divulged that he had also spoken with Defendant GOULD from TRULIFE. The prospect sent the marketing tools and case studies that were presented to him by GOULD to solicit business with TRULIFE. The materials and case studies, however, were previously created by and used in the marketplace by NPI, and are examples of satisfactory customer experiences with NPI, not TRULIFE.

34. In February 2025, a TRULIFE employee solicited a prospective customer by using NPI's Evolution of Distribution system as if it were TRULIFE's. The TRULIFE employee was specific that "we", TRULIFE, provide "Importation, Sales, Marketing, Warehousing and Logistics. You can think of us as a representative for your brand working here in the US market". In fact, the TRULIFE employee described NPI's Evolution of Distribution system.

35. In February 2025, TRULIFE also published a promotional brochure and delivered it to a potential customer of NPI's which quotes purported client testimonials on behalf of TRULIFE.

36. These testimonials include a quotation from Ken Collins of Glanbia, one of the largest sports nutrition companies in the world, which states, "I would highly recommend working with Brian Gould and Trulife and the TLD team to help launch and promote new, innovative products in the Sports Nutrition or Health and Wellness Industries. I have known Brian for

over a decade and he is someone you can count on when it comes to building your sales and distribution." This quote is false. Mr. Collins has not done any business with TRULIFE.

37. TRULIFE has also published a photograph of BRIAN GOULD with Mr. Collins while purportedly acting on behalf of Glanbia. Mr. Collins has requested TRULIFE to not use his likeness, and the photograph has been altered to delete the image of BRIAN GOULD's father, MR. GOULD, as the picture was taken during a business meeting with     NPI.

38. TRULIFE's marketing materials also represent that they have placed customer products with major retailers including GNC, Costco, 7-11, Walmart, Rite Aid Pharmacy, and Walgreens. This is false.  MR. GOULD, however, has placed customer products for sale with those retailers.

39. TRULIFE's marketing materials also represent that they have placed customer products with Amazon and other ecommerce platforms claiming a business of $50M. This is false. NPI, however, has placed customer products for sale with Amazon, and played an integral part in building Amazon's sports nutrition category into a multi-million dollar market for  sports nutrition brands.

40. The TRULIFE marketing material also quotes a Vice President of ECRM. ECRM is a trade organization that TRULIFE pays fees to for the opportunity to present its services at trade shows, and to photograph and video paid- for interactions with related retailers.  The quote states that "Brian [GOULD] has been attending ECRM programs since 2009 to help *his* suppliers grow sales and expand distribution".(bold italics added). The accuracy of this statement is impossible because BRIAN GOULD worked with NPI and attended ECRM programs for the benefit of NPI  until he started his competing business in March 2019.

41. Additionally, the TRULIFE marketing materials have video shorts of industry related professionals in photographs with BRIAN GOULD, including photographs where GOULD is shaking their hand.

42. As of this date, TRULIFE's website publishes a "testimonial" purportedly from Greg Smith, co-owner of Click Protein. The TRULIFE website purports to quote Mr. Smith: "Brian has always been a great asset to our team. He has successfully placed our brand in front of some of the largest retailers in the United States at a rapid pace. We would recommend his services to any Sport/Nutrition/Health & Wellness Band seeking to expand." This quote is false, and Mr. Smith has never given his approval to BRIAN GOULD or TRULIFE to publish this statement, and has had no business dealings with TRULIFE.

43. On or about January 28, 2025, NPI separated from its employment an individual "appointment setter". This individual was almost immediately hired by BRIAN GOULD and TRULIFE to hack into NPI's LinkedIn account for BRIAN's father, and steal NPI's LinkedIn leads. This led to TRULIFE contacting and soliciting a prospect of NPI, who has since confirmed that TRULIFE's marketing materials are essentially the same as NPI's.

44. TRULIFE's continuous unfair competition with NPI since July 9, 2021, has and continues to damage NPI and its clients and potential clients. NPI seeks both to be made whole and to stop these misrepresentations.

**COUNT I**
**PRELIMINARYINJUNCTION AS TO TRULIFE'S USE OF NPI'S CASE STUDIES**

45. The Plaintiff adopts the allegations in paragraphs 1-44 of this Complaint as if fully re-alleged herein.

46. Defendant TRULIFE's continued use the Plaintiff's case studies as if they were examples of successful business relations with TRULIFE is false and misleading. The case studies are examples of the Plaintiff's successful business relationships.

47. Defendants' false and misleading conduct is intended to harm the Plaintiff, and confuse and discourage prospective customers from engaging in business with the Plaintiff.

48. The damage caused by the Defendants is irreparable because the Defendants' conduct leads customers to purchase the services of the Defendant without benefit to the Plaintiff; leads customers to refrain from purchasing the services of the Plaintiff; and, it damages the good will and reputation of the Plaintiff.

49. Monetary damages alone, are not sufficient to remedy the damage to the Plaintiff caused by the Defendants' conduct.

50. The Defendants' conduct is unlawful, and the Plaintiff is likely to prevail on the merits of any and all causes of action alleged herein which are based upon TRULIFE's unauthorized use of NPI's case studies, at the instruction and control of Defendant BRIAN GOULD

51. The injunction serves the private interests of the public as it will prohibit TRULIFE's false advertising and marketing to the public.

52. Any balance of hardships as a result of the injunction weighs in favor of NPI, as the injunction will prohibit TRULIFE from using NPI's successful business relations as its own, and force TRULIFE to accurately market its own customer relationships, if any, for the purpose of soliciting clientele in competition with NPI.

WHEREFORE, NPI demands a permanent injunction against TRULIFE and requests the following relief against BRIAN GOULD and TRULIFE:

- A preliminary injunction prohibiting BRIAN GOULD and TRULIFE from misrepresenting NPI case studies as BRIAN GOULD and TRULIFE case studies; and,

- Any further equitable relief to which the Plaintiff is entitled as a matter of law.

## COUNT II

### VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (INJUNCTIVE RELIEF)

53. Plaintiff adopts and realleges paragraphs 1 through 44 above as is if fully re-alleged herein.

54. Pursuant to Florida Statute §501.211(1), the Plaintiff is entitled to injunctive relief against the Defendants, to enjoin their continued conduct of using, referring to, and/or publishing NPI's case studies as their own because:

55. Defendant TRULIFE's continued use of the Plaintiff's case studies as if they were examples of successful business relations with TRULIFE offends established public policy, and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;

56. Defendant TRULIFE's continued use of the Plaintiff's case studies as if they were examples of successful business relations with TRULIFE is a deceptive practice that is likely to mislead consumers.

57. Defendants' false and misleading conduct is intended to harm the Plaintiff, and confuse and discourage prospective customers from engaging in business with the Plaintiff.

58. The damage caused by the Defendants is irreparable because the Defendants' conduct leads customers to purchase the services of TRULIFE without benefit to the

Plaintiff; leads customers to refrain from purchasing the services of the Plaintiff; and, it damages the good will and reputation of the Plaintiff.

59. Monetary damages alone, are not sufficient to remedy the damage to the Plaintiff or the public caused by the Defendants' conduct.

60. The Defendants' conduct is unlawful, and the Plaintiff is likely to prevail on the merits of any and all causes of action alleged herein which are based upon TRULIFE's unauthorized use of NPI's case studies at the instruction and control of Defendant GOULD.

61. The injunction serves the private interests of the public as it will prohibit TRULIFE'S false advertising and marketing to the public.

62. Any balance of hardships as a result of the injunction weighs in favor of NPI, as the injunction will prohibit TRULIFE from using NPI's successful business relations as its own, and force TRULIFE to accurately market its own customer relationships, if any, for the purpose of soliciting clientele in competition with NPI.

63. Florida Statute §§501.211 and 501.2105 provides for an award of attorneys' fees in favor of Plaintiff should they prevail. Plaintiff has been obligated to retain the undersigned law firm to pursue this matter against the Defendants, and to pay them a reasonable fee for their services. Plaintiff has no adequate remedy at law because the amount of the damage is difficult or impossible to ascertain and of a character that cannot be remedied solely by money.

WHEREFORE, the Plaintiff, NPI, demands judgment against the Defendants, TRULIFE and BRIAN GOULD for violation of Florida's Deceptive and Unfair Trade Practice Act, and for a preliminary injunction, attorneys' fees, court costs, and any other and further relief as this Court deems just and proper.

## COUNT III
## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## (DAMAGES)

65. Plaintiff adopts and realleges paragraphs 1 through 44 as if fully set forth herein.

66. This is an action brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §501.01, *et seq*.

67. Plaintiff is a "consumer" as that term is defined under the Florida Deceptive and Unfair Trade Practices Act.

68. Defendants' actions described herein constitute unfair or deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices under Chapter 501 and specifically under Florida Statute §501.204 and Florida law.

69. As a direct and proximate result of Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act, the Plaintiff has suffered actual damages. Florida Statute §501.211(2) provides for an award of attorneys' fees in favor of Plaintiff should they prevail.

70. Plaintiff has been obligated to retain the undersigned law firm to pursue this matter against the Defendants, and to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff, NPI, demands judgment against the Defendants, TRULIFE and BRIAN GOULD for violation of Florida's Deceptive and Unfair Trade Practice Act, and for actual damages suffered, attorneys' fees, court costs, and any other and further relief as this Court deems just and proper.

## COUNT IV
## <u>LANHAM ACT- FALSE DESIGNATIONS</u>
### (DAMAGES)

71. Plaintiff adopts paragraphs 1 through 44 of this Complaint as if fully realleged herein.

72. This is an action brought pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a) and the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. 1125(d)(1)(A).

73. Defendants, through the foregoing conduct, including but not limited to utilizing the Plaintiff's case studies on their website, telling customers that it is affiliated with the Plaintiff, having used in commerce a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, false or misleading description of fact, or false or misleading representation of fact which:

-is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person; or

- in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods, services or commercial activities..

74. As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered substantial damages.

WHEREFORE, the Plaintiff, NPI, requests judgment against the Defendants, TRULIFE and BRIAN GOULD, and an award of damages, including compensatory

damages, defendant's profits, treble damages, additional damages awarded by the court, statutory damages, interest, attorneys' fees, and court costs.

### COUNT V- CONVERSION

75. Plaintiff adopts paragraphs 1 through 44 of this Complaint as if fully realleged herein.

76. The Defendants have wrongfully exercised dominion and control over the assets of NPI, without NPI's consent, including the use of NPI's case studies, NPI's customer lists, NPI's international sales and marketing proposal, the Evolution of Distribution tradename and methodology, the use of NPI customer prospects whose interest and contact information was obtained by hacking into NPI's LinkedIn account for BRIAN's father, all for the benefit of TRULIFE and GOULD.

77. The Defendants' dominion and control over NPI's assets has been detrimental and damaging to NPI.

78. NPI has been damaged as a result.

WHEREFORE, the Plaintiff, NPI requests judgment against the Defendants TRULIFE and BRIAN GOULD for Conversion, and an award of all damages to which he Plaintiff is entitled as a matter of law and equity

### COUNT VI:   TRADEMARK INFRINGEMENT: Evolution of Distribution
### (FLORIDA COMMON LAW)

79. Plaintiff adopts paragraphs 1 through 44 of this Complaint as if fully realleged herein.

80. The Plaintiff first adopted and used it's the fanciful trademark, "EVOLUTION OF DISTRIBUTION" in the nutritional distribution market and trade area, as a means of establishing good will and reputation and to describe, identify or denominate its particular

services rendered or offered by Plaintiff, and to distinguish them from similar services rendered or offered by others

81. Through its association with such services the Plaintiff's fanciful tradename "EVOLUTION OF DISTRIBUTION" has acquired a special significance in the Plaintiff's trade area because Plaintiff's tradename is inherently distinctive and has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning indicating, describing, identifying or denominating the Plaintiff as the source of certain services.

82. The Defendants BRIAN GOULD and TRULIFE have commenced, or intend to commence, the use of an confusingly similar tradename, "EVOLVE YOUR DISTRIBUTION" to indicate or identify similar services rendered by it in competition with Plaintiff in the same trade area in which the Plaintiff has already established its tradename.

83. As a consequence of the Defendants' action, customer confusion of source or as to the sponsorship of the services offered, or to be offered, by the Defendant is likely or inevitable.

84. The Defendants use of the tradename EVOLVE YOUR DISTRIBUTION, was intended to cause, and did in fact cause, damage to the Plaintiff.

WHEREFORE, the Plaintiff, NPI seeks judgment against Defendants BRIAN GOULD and TRULIFE for trademark infringement (NPI), and an award of all damages to which it is entitled as a matter of law and equity.

## COUNT VII: UNJUST ENRICHMENT

85. Plaintiff adopts paragraphs 1 through 44 of this Complaint as if fully realleged herein.

86. The Plaintiff conferred a benefit upon Defendant GOULD during his employment with NPI by teaching and educating him how to operate and manage the then-state of the art- sports nutrition marketing business which NPI has described throughout this Complaint.

87. Defendant GOULD knew of and accepted that benefit, and then used the benefit to his personal advantage, and to the advantage of TRULIFE, knowing that such would cause substantial damage to his father and the Plaintiff, NPI.

88. Specifically, GOULD has implemented and converted for TRULIFE's benefit and his own, NPI's case studies, NPI's customer lists, NPI's international sales and marketing proposal, the Evolution of Distribution tradename and methodology, NPI customer prospects whose interest and contact information was obtained by hacking into NPI's LinkedIn account for BRIAN's father, and customer contact information from NPI's data base systems.

89. Under the facts and circumstances alleged, it would be inequitable for either Defendant to maintain any such benefit obtained since July 9, 2021.

WHEREFORE, the Plaintiff, NPI seeks judgment against Defendants BRIAN GOULD and TRULIFE for Unjust Enrichment, and an award of all damages to which it is entitled as a matter of law and equity, including disgorgement.

## REQUEST FOR JURY TRIAL

Plaintiff, NPI, hereby requests a jury trial for all claims, counts, and issues so triable.

Respectfully filed this 28th day of March 2025.

Respectfully on behalf of Nutritional Products International, Inc.

*Murray Hudson*

_____
Murray Hudson, Esquire
Fla. Bar. No: 788503
Murray Hudson Law, PLLC

5255 N. Federal Hwy. #318
Boca Raton, FL 33487
T: (561) 448-2703
murray@murrayhudsonlaw.com
vr@murrayhudsonlaw.com